UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARRY KEVIN FALK,

        Plaintiff,

   -against-

CAROLYN W. COLVIN,
 Acting Commissioner of Social Security,

        Defendant.

**OPINION AND ORDER**

15 Civ. 3863 (ER) (KNF)

Ramos, D.J.:

  Barry Kevin Falk ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security ("Commissioner") to deny his application for disability benefits. Pending before the Court are the parties' cross-motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). On June 22, 2016, Magistrate Judge Kevin Nathaniel Fox issued a Report and Recommendation ("R&R"), recommending that Plaintiff's motion be granted, the Commissioner's motion be denied, the ALJ's finding of not disabled be reversed, and the Commissioner be directed to pay benefits to Plaintiff. The Commissioner filed timely objections to the R&R.

  For the reasons stated herein, both parties' motions are DENIED and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Plaintiff's Medical History

  Plaintiff's application for disability benefits stems from an injury he sustained on January 18, 2009, while on duty as a New York State Police Trooper. On that date, Plaintiff was at the scene of a truck accident, where he slipped on ice, injuring his back. Tr. at 38. As a result of the

incident, Plaintiff did not return to work, and he experienced back pain for which he sought treatment with various medical professionals. Based on a February 11, 2009 MRI scan, doctors concluded that Plaintiff was suffering an injury to his spine, specifically, spondylolisthesis at the L5-S1 level. Tr. at 531, 539–40, 783–84.

After more conservative treatment failed to alleviate his pain, in October 2009, Dr. James Farmer performed decompression and fusion surgery on Plaintiff's spine. Tr. at 769–71.[1] Following the surgery, Plaintiff initially reported complete relief of his leg pain, Tr. at 771, but as months went by, he began to experience increasing pain in his back and legs, Tr. at 774. As a result, in July 2010, Dr. Farmer performed a second surgery on Plaintiff's spine. Tr. at 248–53. Plaintiff thereafter continued to see Dr. Farmer periodically for follow-up treatment, and he reported making gradual progress. Tr. at 777–79.

In January 2011, Plaintiff reported to Dr. Farmer that while he still had some lower back pain, the pain in his legs was essentially gone. Tr. at 780. Due to his steady progress, Dr. Farmer permitted Plaintiff to return to work on "light duty." *Id.* According to Plaintiff, his light duty assignment was "difficult" and "rough," as he was unable to leave his desk. Tr. at 54. Plaintiff claims he spent half of the eight-hour workday standing and the other half sitting or "kind of walking around in circles." *Id.*

At his next visit to Dr. Farmer in April 2011, Plaintiff reported "having a lot of bad days." Tr. at 781. He complained of pain in his buttocks and legs due to sitting at work, although he noted that he generally tended to do better when walking and standing. *Id.* When he returned to see Dr. Farmer in June 2011, Plaintiff reported that he was standing at work a lot because sitting

---

[1] In his August 16, 2013 decision, the administrative law judge ("ALJ") incorrectly noted that it was Dr. Howard Yeon who performed Plaintiff's surgeries. Tr. at 18.

2

caused him too much pain in his back and down the back of his legs. Tr. at 782. Dr. Farmer recommended that Plaintiff begin working out in the gym. *Id.*

In late September 2011, Plaintiff was put on disability retirement by the State Police. Tr. at 46, 54–56. Plaintiff did not want to retire, but he was given no choice. Tr. at 46. Plaintiff claims that his lieutenant and captain made calls to try to prevent his retirement, and that his captain told him that he would not care if Plaintiff walked around the communication room for the next ten years, so that he could retire with the benefit of twenty years of service. Tr. at 56. When Plaintiff returned to see Dr. Farmer in October 2011, Dr. Farmer concluded that Plaintiff's symptoms were chronic and were not likely to improve with continued conservative care. Tr. at 785.

Plaintiff's primary care physician, Dr. Lissa Scarlett, referred him to Dr. Syed Asim Husain for pain management. Tr. at 387–89. At his first visit with Dr. Husain on December 7, 2011, Plaintiff reported pain in his lower back that travelled down to both legs, and he rated his pain a 4 out of 10 in terms of intensity. Tr. at 387. Plaintiff also reported that his pain worsened with driving and sitting in a regular chair, and that his pain was relieved by walking and sitting in a reclined position. Tr. at 388. Dr. Husain diagnosed Plaintiff with chronic lumbosacral radiculitis, a radiating pain associated with the nerves. Tr. at 389. Dr. Husain prescribed medication and physical therapy for Plaintiff's pain, and noted that Plaintiff might be a candidate for a spinal cord stimulator. *Id.*

On January 6, 2012, Plaintiff reported to Dr. Scarlett that he had started going to the gym. Tr. at 415. He stated that he was doing the elliptical for 20 to 25 minutes per day, 3 to 4 days per week for the past week and a half. *Id.* A few days later, on January 9, 2012, Plaintiff received a caudal epidural—a steroid injection near the lower spine—and it provided minimal relief. Tr. at 425.

On January 19, 2012, Plaintiff reported to Dr. Husain that he finished physical therapy, which had also provided minimal relief. Tr. at 427. That same day, Dr. Husain filled out a progress report in connection with Plaintiff's case for workers' compensation benefits, wherein he opined that Plaintiff's complaints were consistent with his injury, that Plaintiff could not return to work because of his pain, and that Plaintiff was 100% temporarily impaired. Tr. at 899–900. On February 17, 2012, Dr. Husain filled out a follow-up report for the workers' compensation case, wherein he opined that Plaintiff was only 75% temporarily impaired, and that Plaintiff could return to work, but with limitations on bending, climbing, lifting, and operating heavy equipment. Tr. at 889–90.

Plaintiff continued to follow up with his physicians periodically throughout 2012.[2] He continued to report pain in his lower back and legs, although he told his physicians that the medication he was taking provided some relief. *See, e.g.*, Tr. at 398, 426, 468, 478. Plaintiff also continued to report that his pain was relieved by walking, and that it was worsened by sitting, standing, and walking too much. *See, e.g.*, Tr. at 426, 438, 447, 469, 479, 491, 510, 507.

On May 18, 2012, Plaintiff reported to Dr. Scarlett that he had stopped going to the gym. Tr. at 499. In June, he reported to Dr. Husain that his pain had worsened. Tr. at 509. He stated that there were a few days on which he was in tears. *Id.* Dr. Husain referred plaintiff to Dr. Howard Yeon for a consultation, and on July 3, 2012, after examining Plaintiff, Dr. Yeon reported that Plaintiff was still in the mid-late healing phase from his fusion surgery. Tr. at 594–96. On November 9, 2012, Dr. Husain completed another progress report for Plaintiff's workers' compensation case, opining that Plaintiff was 100% temporarily impaired. Tr. at 881–82. A few

---

[2] The ALJ noted that Plaintiff made numerous follow-up visits to Dr. Carl Silverio. Tr. at 20. However, it appears that Dr. Silverio merely examined an X-ray of Plaintiff's knee once on March 16, 2012, at the request of Dr. Husain. *See* Tr. at 490, 509, 506, 868, 860, 1028, 1022, 1016 (progress notes from Plaintiff's visits to Dr. Husain in 2012 and 2013, all containing the same impression from Dr. Silverio dated March 16, 2012).

4

days later, in a letter regarding Plaintiff's MRI, Dr. Husain noted that Plaintiff's lumbosacral radiculitis was worsening. Tr. at 720.

Plaintiff continued to see Dr. Husain periodically in 2013. At times he reported increased pain; at times he reported that his pain had remained the same. *See, e.g.*, Tr. at 868, 860, 1028, 1022, 1016. On February 21, 2013, Plaintiff returned to Dr. Farmer for a follow-up visit, where he reported that sitting bothered him the most, and that prolonged standing also bothered him. Tr. at 1014. Plaintiff noted that he was walking up to a mile a day, and Dr. Farmer noted that he felt Plaintiff should begin some workouts in the gym. *Id.* Plaintiff saw Dr. Farmer for another follow-up visit on May 28, 2013, and he continued to complain of the pain in his lower back, buttocks, and legs. Tr. at 1015. Plaintiff reported that he was exercising regularly, and Dr. Farmer noted that Plaintiff would begin another trial of physical therapy. *Id.* Plaintiff also discussed with Dr. Farmer that he was feeling increasingly depressed as a result of his chronic back pain. *Id.* On June 14, 2013, Dr. Husain noted that conservative treatment with physical therapy and medication had failed to adequately cover Plaintiff's pain. Tr. at 1019.

### B. Plaintiff's Application for Disability Benefits

Plaintiff first applied for Social Security disability benefits on March 10, 2010, alleging disability from January 18, 2009, the date of his on-duty injury, to January 20, 2011, the date he returned to "light duty" work. Tr. at 84. Following a hearing at which Plaintiff testified, the administrative law judge ("ALJ") determined that Plaintiff was disabled during the applicable period. Tr. at 79–88.

On May 15, 2012, Plaintiff again applied for disability benefits, this time alleging disability beginning August 10, 2011. Tr. at 14. A hearing was held on June 21, 2013, at which Plaintiff and a vocational expert testified. Tr. at 31–71. In a decision dated August 16, 2013, the ALJ concluded that Plaintiff was not disabled. Tr. at 11–26.

5

Considering Plaintiff's testimony and medical records, the ALJ found that: (1) Plaintiff met the insured status requirements of the Social Security Act; (2) Plaintiff had not engaged in substantial gainful activity since August 10, 2011, the alleged disability onset date; (3) Plaintiff had severe impairments, including spondylolisthesis, lumbar radiculitis, sleep apnea, headaches, and obesity; (4) Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"); (5) while Plaintiff required a sit/stand option at will and needed to avoid working at unprotected heights and operating motor vehicles, Plaintiff retained the residual functional capacity ("RFC") to sit for six hours in an eight-hour workday, to stand and walk for two hours in an eight-hour workday, to occasionally lift, carry, push, and pull ten pounds, and to occasionally stoop, crouch, and climb stairs; (6) Plaintiff was 47 years old on the alleged disability onset date; (7) Plaintiff had at least a high school education; and (8) Plaintiff was able to communicate in English. Tr. at 16–24. Taking into account these findings and the testimony of a vocational expert, the ALJ further found that although Plaintiff was unable to perform any of his past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 24–25.

In determining Plaintiff's RFC, the ALJ accorded "great weight" to the opinions of two independent medical examiners: Dr. Jose Corvalan, who evaluated Plaintiff on July 12, 2012 at the request of the Social Security Administration, and Dr. Paul Jones, who evaluated Plaintiff on January 24, 2013 for the New York State Workers' Compensation Board. Tr. at 23, 306–10, 911–16. Dr. Corvalan concluded that "due to [his] low back pain," Plaintiff had a "moderate limitation for sitting and standing for long periods of time, walking long distances, bending, squatting, climbing stairs, or lifting any heavy objects." Tr. at 309. Dr. Jones concluded that Plaintiff could return to work in a "sedentary position," although Plaintiff had to have a job

where he could "change position as necessary," since his legs begin to go numb after sitting for any period of time. Tr. at 913. The ALJ noted that these two opinions provided substantial support for Plaintiff's RFC to perform "sedentary work." Tr. at 23. The ALJ accorded less weight to Plaintiff's treating physicians, Dr. Farmer and Dr. Husain, noting that Dr. Farmer did not provide a complete diagnosis of Plaintiff's disability and that Dr. Husain's "extreme" opinions regarding Plaintiff's level of impairment (*i.e.*, 75% to 100%) were not specific and were not supported by his own reports. Tr. at 23–24.

The ALJ also discounted Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain in evaluating Plaintiff's RFC, citing four primary reasons. Tr. at 22. First, the ALJ noted that Plaintiff's daily activities, which included walking his dogs and exercising, were not limited to the extent one would expect given his complaints. *Id.* Second, the ALJ determined that Plaintiff's claims regarding his limits on sitting, standing, and walking were not well supported by any contemporaneous complaints to his treating sources. *Id.* Third, the ALJ concluded that Plaintiff's treatment since his surgery had been "essentially routine and/or conservative in nature" with the exception of the steroid injections he received. Tr. at 22–23. Finally, the ALJ noted that "[f]rom his own testimony, [Plaintiff] acknowledge[d] that he could have continued to work" in his "light duty" capacity with the State Troopers, "rais[ing] a question" as to whether Plaintiff's unemployment was actually due to his medical impairment or a desire not to engage in other occupations. Tr. at 23.

Plaintiff asked the Appeals Council to review the ALJ's decision. Tr. at 7–8. On March 18, 2015, Plaintiff's request was denied, rendering the ALJ's decision the final decision of the Commissioner in his case. Tr. at 1–4. On May 19, 2015, Plaintiff appealed the decision by filing the Complaint in this action. Doc. 1. The parties thereafter cross-moved for judgment on the pleadings. *See* Docs. 14–15, 21–22, 26.

7

On June 22, 2016, Magistrate Judge Fox issued the R&R. Doc. 28. Among other things, Magistrate Judge Fox concluded that the ALJ's finding regarding Plaintiff's RFC was not supported by substantial evidence. *Id.* at 13–16. Accordingly, he recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, the ALJ's finding of not disabled be reversed, and the Commissioner be directed to pay benefits to Plaintiff. *Id.* at 18. The Commissioner filed timely objections to the R&R, Doc. 29, which Plaintiff opposed, Doc. 31.

## II. STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise specific, written objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). Here, the Commissioner objected to Magistrate Judge Fox's recommended rulings regarding (1) the ALJ's assessment of Plaintiff's RFC; (2) the ALJ's reliance on the vocational expert's testimony; and (3) the remedy for the ALJ's purported errors. Doc. 29. Thus, the Court reviews these issues *de novo*.

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a denial of disability benefits, however, the Court may not determine *de novo* whether an individual is

8

disabled.  *Id.*  Rather, the Court may only reverse the ALJ's determination if it is based upon legal error or is not supported by substantial evidence.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If the ALJ's findings as to any fact are supported by substantial evidence, those findings are conclusive.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  If, on the other hand, the ALJ's determination is not supported by substantial evidence or contains legal error, the determination must be reversed or remanded.  *Rosa*, 168 F.3d at 77.

## III.  DISCUSSION

### A.  Determining Disability

An individual is considered "disabled" under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to determine whether an individual is disabled, the Commissioner follows a five-step sequential evaluation process set out in 20 C.F.R. § 404.1520.  "If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

At step one, the Commissioner determines whether the individual is engaged in any "substantial gainful activity;" if he is, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(i), (b).  At step two, the Commissioner determines whether the individual has a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities;" if he does not, he is not disabled.  *Id.* § 404.1520(c), (a)(4)(ii).  At step three, the Commissioner determines

whether the individual has an impairment that meets or equals one of those listed in Appendix 1; if he does, he is disabled. *Id.* § 404.1520(a)(4)(iii), (d). If he does not, the Commissioner will assess and make a finding about the individual's RFC—or "the most [he] can still do despite [his] limitations"—based on all the relevant medical and other evidence in his case record. *Id.* §§ 404.1520(e), 404.1545(a)(1). At step four, the Commissioner determines whether, considering his RFC, the individual can still do his past relevant work; if he can, he is not disabled. *Id.* § 404.1520(a)(4)(iv), (f). Finally, at step five, the Commissioner determines whether, considering his RFC, age, education, and work experience, the individual can make adjustment to other work; if he cannot make adjustment to other work, he is disabled, and if he can, he is not. *Id.* § 404.1520(a)(4)(v), (g).

### B. Analysis of the ALJ's Decision

Having reviewed the record, the Court affirms the ALJ's findings at steps one through three.[3] Namely, the Court finds that substantial evidence supports the ALJ's findings that Plaintiff had not been engaged in any substantial gainful activity since August 10, 2011; that Plaintiff had severe impairments, including spondylolisthesis and lumbar radiculitis; and that Plaintiff's impairments did not meet or equal one of those listed in Appendix 1. Tr. at 16–17.

The ALJ's assessment of Plaintiff's RFC, on the other hand, is flawed in numerous respects. As an initial matter, the ALJ erred by failing to describe Plaintiff's RFC with the requisite level of specificity. Social Security Ruling 96-9p provides:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC

---

[3] Magistrate Judge Fox did not address steps one through three in the R&R.

      assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.

SSR 96-9p (7/2/96), 1996 WL 374185, at *7.

      Here, the ALJ concluded that Plaintiff had the RFC to perform less than the full range of sedentary work, since he required a sit/stand option at will.[4] Tr. at 17. Yet the ALJ made no determination as to the frequency with which Plaintiff would need to alternate between sitting and standing. The ALJ thus failed to properly determine the extent of Plaintiff's limitations, rendering the RFC assessment incomplete. *See Overbaugh v. Astrue*, 07 Civ. 0261 (NAM) (DEP), 2010 WL 1171203, at *9 (N.D.N.Y. Mar. 22, 2010) ("Without this assessment, the Court is unable to analyze the limitations on plaintiff's work schedule."); *see also* SSR 96-9p, 1996 WL 374185, at *6 ("An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource."); *id.* at *3 ("[A] finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded.").

      In addition, the ALJ's determination that Plaintiff was capable of sitting for six hours and standing and walking for two hours in an eight-hour workday is not supported by substantial evidence. Nowhere in the ALJ's decision does he explain the basis for this precise finding regarding Plaintiff's capabilities. This Court has carefully reviewed the medical evidence, and nothing therein supports such a finding. None of Plaintiff's treating physicians provided a

---

[4] "Sedentary work is the least rigorous of the five categories of work recognized by [the Social Security Administration's] regulations." *Schaal v. Apfel*, 134 F.3d 496, 501 n.6 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1567 (defining the five categories of work). Social Security Ruling 96-9p explains that "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." 1996 WL 374185, at *6. If an individual needs to "alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically," and cannot accommodate that need "by scheduled breaks and a lunch period," the individual would not be able to perform the full range of sedentary work. *Id.* at *6–7.

medical opinion as to Plaintiff's capabilities in this regard.[5] Dr. Corvalan provided too vague an opinion to be useful on this point, stating that Plaintiff had a "moderate limitation for sitting and standing for long periods of time." Tr. at 309; *see Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (deeming a doctor's opinion "so vague as to render it useless" in evaluating whether plaintiff could perform sedentary work, where the doctor used the terms "moderate" and "mild"), *superseded on other grounds*, 20 C.F.R. § 404.1560. And Dr. Jones provided no opinion as to whether Plaintiff could sustain sitting for six hours in a workday, determining only that Plaintiff needed to have a job where he could change position as necessary, since his legs begin to go numb after sitting for any period of time. Tr. at 913. "The ALJ was not permitted to speculate about [Plaintiff's] capacity to remain seated based on these medical reports; rather, he had a duty to defer his decision until he procured medical evidence that specifically discussed [Plaintiff's] capacity to remain seated for six hours" and to sustain standing and walking for two hours. *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000).

The only evidence in the record speaking specifically to the length of time Plaintiff could sustain sitting and standing in a workday is Plaintiff's own testimony, which the ALJ unduly discredited. Plaintiff testified that he began to feel pain after approximately ten to fifteen minutes of sitting, and that he had to lie down about three or four times during the course of a normal day. Tr. at 50. Plaintiff also testified that he would be unable to sit or stand during an eight-hour workday without being able to go for a walk or lay down. Tr. at 57. Notably, when asked about his "light duty" position, Plaintiff explained that he struggled with the work, Tr. at

---

[5] The ALJ discounted Dr. Husain's reports that Plaintiff was 75% to 100% temporarily impaired. Tr. at 23. But these reports were prepared in the workers' compensation context, "which is not governed by the same standard as applications for Social Security disability benefits." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 67 (N.D.N.Y. 2012).

57, that he spent less than half the day sitting, and that he spent some of the day just "walking around in circles," Tr. at 54.

The ALJ determined that Plaintiff's claims were not entirely credible, but substantial evidence does not support such a finding. As the ALJ noted, Plaintiff has an "excellent work history." Tr. at 23. Plaintiff served in the Air Force for approximately ten years, worked as an airline mechanic for approximately two years, and served as a State Trooper for approximately eleven years prior to injuring his back. Tr. at 37, 217. "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983); *see also Woodford*, 93 F. Supp. 2d at 530 n.14 (noting that a plaintiff's testimony should have been given "substantial weight" where she worked consistently for thirty-one years prior to her accident).

Instead of according Plaintiff's testimony substantial weight, the ALJ found that Plaintiff was not entirely credible, based on testimony and inconsistencies not actually present in the record. The ALJ relied on Plaintiff's testimony that he wanted to continue working to discredit his claims, Tr. at 23, but a desire to work and the capability to work are two separate issues, and, in any event, "any evidence of a desire by [Plaintiff] to work would merely emphasize the positive value of his [23-year] employment history," *Rivera*, 717 F.2d at 725. The ALJ also stated that Plaintiff "acknowledge[d]" that he could have continued working at the "light duty" position, Tr. at 23, but Plaintiff in fact testified that he struggled with the work, and that he spent time during the workday walking around in circles because of his pain, Tr. at 54, 57.

The ALJ also found that Plaintiff's complaints were inconsistent with evidence that he could walk up to one mile a day. Tr. at 22. This activity is, however, entirely consistent with Plaintiff's complaints—reported throughout the course of his medical treatment—that *sitting and*

*standing* worsened his pain, whereas *movement* alleviated it.[6] *See, e.g.*, Tr. at 329 (reporting to Dr. Scarlett on July 27, 2011 that he was having pain when sitting and standing); Tr. at 349 (reporting to Dr. Scarlett on September 28, 2011 that he had difficulty sitting or standing for prolonged periods); Tr. at 388 (reporting to Dr. Husain on December 7, 2011 that his pain was worsened by driving and sitting in a regular chair and relieved by walking and sitting in a reclined position); Tr. at 438 (reporting to Dr. Scarlett on February 6, 2012 that his pain was worsened with sitting and standing and that he experienced relief by taking small walks); Tr. at 510 (reporting to Dr. Husain on June 8, 2012 that he experienced relief by reclining and walking and that his pain was worsened by walking too much and sitting for too long); Tr. at 1014 (reporting to Dr. Farmer on February 21, 2013 that sitting bothered him most, although standing for prolonged periods also bothered him); Tr. at 1018 (reporting to Dr. Husain on June 14, 2013 that his pain was worsened by walking and standing).

Finally, the ALJ discredited Plaintiff's testimony on the basis of an assessment that, except for the steroid injections he received, Plaintiff's treatment since his surgeries had been "essentially routine and/or conservative in nature." Tr. at 22–23. This finding is not only better left to the judgment of a medical professional, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998),[7] but it is also not supported by substantial evidence. The record shows that Plaintiff's physicians considered him a candidate for a spinal cord stimulator, *see, e.g.*, Tr. at 389, and that they explored the possibility of performing a third surgery, *see, e.g.*, Tr. at 1028. Moreover,

---

[6] Similarly, the ALJ found that Plaintiff's ability to exercise showed that he retained the ability to perform "sedentary work." Tr. at 19, 21. Yet the activities described by Plaintiff and his physicians—*e.g.*, walking, doing the elliptical—do not demonstrate a capability of sitting or standing for prolonged periods. *See Woodford*, 93 F. Supp. 2d at 529 ("[T]he mere fact that someone is able to remain seated for a plane ride does not establish that he can sit for six hours on a regular basis.").

[7] The ALJ also improperly concluded that Plaintiff did not have "the type of lingering issues that would support a finding of disability," based on his lay reading of Dr. Yeon's July 3, 2012 progress notes indicating there were no problems stemming from Plaintiff's prior surgeries. Tr. at 20; *see Balsamo*, 142 F.3d at 81 ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

whether or not Plaintiff's treatment had been routine or conservative, it apparently failed to adequately cover his pain. Tr. at 1019; *see also* Tr. at 785 ("[S]ome of [Plaintiff's] symptoms are chronic at this point and will not likely improve with further conservative care.").

Because the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence and was based upon legal error, remand is appropriate. *See Horan v. Astrue*, 350 F. App'x 483, 485 (2d Cir. 2009), *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *Norman v. Astrue*, 912 F. Supp. 2d 33, 74 (S.D.N.Y. 2012). On remand, the ALJ should reassess Plaintiff's credibility, taking into account the above-discussed concerns, and, if necessary, procure medical evidence that specifically addresses the number of hours Plaintiff could sustain sitting and standing in a workday and the frequency with which Plaintiff must alternate sitting and standing.

On remand, the ALJ will also need to revisit his determination with respect to steps four and five of the sequential evaluation process. The ALJ arrived at his findings at these steps by posing hypothetical questions to the vocational expert regarding Plaintiff's limitations.[8] However, without a proper determination as to what those limitations are, the ALJ's findings as to these steps are not supported by substantial evidence. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (noting that remand may be appropriate where "an ALJ fails to assess a

---

[8] The ALJ asked the vocational expert whether someone with Plaintiff's age, education, and work history would be capable of performing any of Plaintiff's past work or another job in the national economy, assuming three different hypothetical RFCs: (1) an RFC to perform a limited range of sedentary work, such that the person could only occasionally stoop, crouch, and climb stairs and must avoid working at unprotected heights and operating motor vehicles; (2) an RFC to perform a limited range of sedentary work, such that the person could only occasionally stoop, crouch, climb stairs, must avoid working at unprotected heights and operating motor vehicles, and would need to be able to alternate between sitting and standing every two hours; and (3) an RFC to perform a limited range of sedentary work, such that the person could only occasionally stoop, crouch, climb stairs, must avoid working at unprotected heights and operating motor vehicles, and would need to be able to alternate between sitting and standing at will. Tr. at 60–65. Plaintiff's attorney posed a fourth hypothetical RFC: (4) an RFC to perform a limited range of sedentary work, such that the person could only occasionally stoop, crouch, climb stairs, must avoid working at unprotected heights and operating motor vehicles, would need to be able to alternate between sitting and standing, and would need to lay down for thirty minutes three to four times a day. Tr. at 65–66. The vocational expert testified that there are jobs in the national economy that someone in the first three hypothetical scenarios could perform, but no jobs for someone in the fourth. Tr. at 60–66.

claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review"); *Rosa*, 168 F.3d at 82–83 (finding that remand was appropriate where the extent of Plaintiff's injuries was "not at all clear, and the ALJ failed to develop the record sufficiently to make any appropriate determination in either direction").

## IV. CONCLUSION

For the aforementioned reasons, the parties' cross-motions for judgment on the pleadings are DENIED and the case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 14 and 21.

It is SO ORDERED.

Dated:   August 18, 2016
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.